IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK09-43626-TLS |
| | ) | |
| JOSEF J. CUNNINGHAM, | ) | CH. 7 |
| | ) | |
| Debtor. | ) | |
| ALPINE VILLAGE RETIREMENT CENTER, | ) | ADV. NO. A10-04013-TLS |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| JOSEF J. CUNNINGHAM, | ) | |
| | ) | |
| Defendant. | ) | |

## **ORDER**

Trial was held in Lincoln, Nebraska, on July 15, 2010. John Thomas appeared for Plaintiff, Alpine Village Retirement Center ("Alpine Village"), and Bradley C. Easland appeared for Debtor-Defendant, Josef J. Cunningham. The parties were given the opportunity to file closing written arguments, and this matter is now ready for decision.

Alpine Village believes that Mr. Cunningham's indebtedness to it should be denied a discharge under 11 U.S.C. § 523(a)(2)(A) and (a)(4). Alternatively, Alpine Village believes that Mr. Cunningham should be denied a discharge pursuant to 11 U.S.C. § 727(a)(4). For the reasons discussed below, I find that Plaintiff's request for relief is denied and that Plaintiff's complaint (Fil. #1) is dismissed.

### *Background*

Many of the facts are undisputed:

1. Mr. Cunningham is the son of Sylvia Wilson. Sylvia Wilson is 89 years old, and Mr. Cunningham has had her power of attorney since 1991.

2. In 1993, Sylvia Wilson deeded to Mr. Cunningham the real property and improvements located at 409 West 7th Street, Neligh, Nebraska. Mr. Cunningham lives in that home.

3. In 2000, Sylvia Wilson also deeded her home located at 102 H Street, Neligh, Nebraska, to Mr. Cunningham. Sylvia Wilson lived in that home until February 2009.

4.      In September 2005, Mr. Cunningham deeded both houses to his daughter, Michele Lee Guthrie.

5.      On February 13, 2009, Sylvia Wilson was admitted to Alpine Village as a resident. Mr. Cunningham signed the admission agreement, which provides that if it is signed by someone who has legal access to the resident's income or resources, the representative is to provide Alpine Village with payment from the resident's income or resources. It further provides that "if the Resident's funds run out and the Resident or family chooses not to participate in the Medicaid program then the individual(s) signing this agreement guarantees payment with their own financial resources."

6.      Sylvia Wilson has two sources of monthly income. She receives $1,374.00 per month from Social Security which, at the time of her admission, was automatically deposited into her bank account. Mr. Cunningham had signing rights with respect to that bank account. Her other source of income is a pension in the amount of $1,138.21, which came by check.

7.      Mr. Cunningham did not use Sylvia Wilson's income to pay for her care at Alpine Village. In fact, from February through the present date, he has paid only $201.00 to Alpine Village. Since Mr. Cunningham did not use Sylvia Wilson's income to pay for her care, Alpine Village sued Mr. Cunningham in Antelope County District Court and obtained a judgment against him. Alpine Village asserts that there is currently in excess of $30,000.00 due on its judgment.

8.      By June 2009, Alpine Village had taken steps to cause Sylvia Wilson's Social Security funds to be paid directly to it. Further, by December 2009, Alpine Village caused a guardian to be appointed for Sylvia Wilson and, as of that time, the pension checks were sent to the guardian instead of to Mr. Cunningham. Thus, by July 2009, Mr. Cunningham no longer had control of his mother's Social Security funds and by December 2009 he no longer had control of her pension funds.

9.      Alpine Village also filed a fraudulent transfer proceeding which resulted in the 2005 deed from Mr. Cunningham to his daughter being voided.

10.     Mr. Cunningham was divorced in 1989 and last worked in car sales in 1989. He remarried in 1996 and again divorced in 2006. During this time, he had not worked. Mr. Cunningham testified that he used his mother's income to take care of her, to pay her bills, and to take care of her house.

*Discussion*

Alpine Village believes that Mr. Cunningham should be denied a discharge under § 727(a)(4). Specifically, § 727(a)(4) provides that a debtor should be denied a discharge if the debtor "knowingly and fraudulently, in or in connection with the case – (A) made a false oath or account[.]"

In a proceeding under § 727 for denial of discharge, the burden of proof is on the objecting party to prove each element of a § 727 complaint by a preponderance of the evidence. *Floret, L.L.C. v. Sendecky (In re Sendecky)*, 283 B.R. 760, 763 (B.A.P. 8th Cir. 2002) (quoting *Korte v. United States (In re Korte)*, 262 B.R. 464, 471 (B.A.P. 8th Cir. 2001)). "The denial of a debtor's discharge is a 'harsh sanction,' therefore, the provisions of 11 U.S.C. § 727(a) are 'strictly construed in favor of the debtor.'" *Id.*

Section 727(a)(4) of the Bankruptcy Code denies a debtor a discharge if, in or in connection with the case, he or she knowingly and fraudulently made a false oath or account. A false oath bars discharge in bankruptcy if it is both material and made with an intent to defraud. *Jordan v. Bren (In re Bren)*, 122 Fed. Appx. 285, 286 (8th Cir. 2005) (citing *Korte*, 262 B.R. at 474). Reckless disregard for the truth will support a finding of fraudulent intent for the purpose of denying a debtor his discharge under § 727(a)(4)(A). *Bank of Bennington v. Thomas (In re Thomas)*, 431 B.R. 468, 472 (B.A.P. 8th Cir. 2010) (citing *Korte* at 474).

To deny a debtor a discharge under this subparagraph, a plaintiff must establish that: (1) the debtor knowingly and fraudulently; (2) in or in connection with the case; (3) made a false oath or account; (4) regarding a material matter. *Sullivan v. Bieniek (In re Bieniek)*, 417 B.R. 133, 138 (Bankr. D. Minn. 2009) (citing *Korte*, 262 B.R. at 474).

Alpine Village believes that Mr. Cunningham made false statements or accounts in his bankruptcy schedules by failing to disclose income. However, Mr. Cunningham did <u>not</u> fail to disclose income. The reality is that the income to which Alpine Village refers is actually the Social Security and pension income of Sylvia Wilson. In other words, Mr. Cunningham was living off his mother. He acknowledged using some of her money to pay for his own groceries, bills, etc. However, he asserted that he did so with his mother's permission. Thus, Mr. Cunningham did not hide or fail to disclose any actual income, and this is not a case where the "harsh sanction" of denial of discharge should be imposed.

Turning next to the dischargeability of the indebtedness owed to Alpine Village, Alpine Village asserts that its debt should not be discharged under 11 U.S.C. § 523(a)(2)(A).

Exceptions to discharge are usually "narrowly construed against the creditor and liberally against the debtor, thus effectuating the fresh start policy of the Code." *Caspers v. Van Horne (In re Van Horne)*, 823 F.2d 1285, 1287 (8th Cir. 1987), *abrogated on other grounds*, *Grogan v. Garner*, 498 U.S. 279 (1991). "The Bankruptcy Code has long prohibited debtors from discharging liabilities incurred on account of their fraud, embodying a basic policy animating the Code of affording relief only to an 'honest but unfortunate debtor.'" *Cohen v. de la Cruz,* 523 U.S. 213, 217 (1998) (internal citation omitted).

Bankruptcy Code Section 523(a)(2)(A) excepts certain debts from discharge. It provides, in pertinent part, that a discharge:

>    does not discharge an individual debtor from any debt . . . for money, property,
>    services, or an extension, renewal, or refinancing of credit, to the extent obtained by
>    . . . false pretenses, a false representation, or actual fraud, other than a statement
>    respecting the debtor's or an insider's financial condition.

11 U.S.C. §523(a)(2)(A).

A creditor's success in a nondischargeability action for actual fraud under § 523(a)(2)(A) requires the creditor to prove, by a preponderance of the evidence, that: (1) the debtor made a false representation; (2) at the time the representation was made, the debtor knew it was false; (3) the debtor made the representation deliberately and intentionally with the intention and purpose of deceiving the creditor; (4) the creditor justifiably relied on the representation; and (5) the creditor sustained loss and damage as a proximate result of the misrepresentation. *Field v. Mans,* 516 U.S. 59, 74 (1995) (justifiable reliance); *Grogan*, 498 U.S. at 291 (burden of proof)*; Merchants Nat'l Bank of Winona v. Moen (In re Moen)*, 238 B.R. 785, 790 (B.A.P. 8th Cir. 1999) (elements of proof under § 523(a)(2)(A)) (citations omitted).

To amount to fraud, a statement must be made deliberately and intentionally with the intention and purpose of deceiving. *Lindau v. Nelson (In re Nelson)*, 357 B.R. 508, 513 (B.A.P. 8th Cir. 2006). "The intent element of § 523(a)(2)(A) does not require a finding of malevolence or personal ill-will; all it requires is a showing of an intent to induce the creditor to rely and act on the misrepresentations in question." *Moen*, 238 B.R. at 791 (quoting *Moodie-Yannotti v. Swan (In re Swan)*, 156 B.R. 618, 623 n.6 (Bankr. D. Minn. 1993)). "Because direct proof of intent (i.e., the debtor's state of mind) is nearly impossible to obtain, the creditor may present evidence of the surrounding circumstances from which intent may be inferred." *Id.* (quoting *Van Horne*, 823 F.2d at 1287). The intent to deceive will be inferred when the debtor makes a false representation and knows or should know that the statement will induce another to act. *Id.* (quoting *Federal Trade Comm'n v. Duggan (In re Duggan)*, 169 B.R. 318, 324 (Bankr. E.D.N.Y. 1994)). *See also Blue Skies, Inc. v. Preece (In re Preece)*, 367 B.R. 647, 653 (B.A.P. 8th Cir. 2007) (finding that the debtor's actions were more serious than simply using funds entrusted to him by customers to keep his business afloat; "Debtor had to have obtained these funds knowing that they would not be available to purchase the helicopters he promised the Plaintiffs to purchase."). The key is whether the debtor knew the statement to be false at the time he made it. "Even if a false statement is made, no fraud exists unless the maker knows the statement is false at the time the statement is made." *Nelson*, 357 B.R. at 513.

Here, there is no question that Mr. Cunningham breached his contract with Alpine Village to use Sylvia Wilson's funds in payment of her care. However, absent evidence of fraud, debts arising from contract breaches are not excepted from discharge in bankruptcy. *Nelson*, 357 B.R. at 514; *Integrated Practice Mgmt., Inc. v. Olson (In re Olson)*, 325 B.R. 791, 801 (Bankr. N.D. Iowa 2005). Therefore, the question is whether Mr. Cunningham's actions amount to fraud; specifically, whether he had an intent to deceive. Having heard the testimony, I do not believe that Mr. Cunningham did. It is clear that for many years, Mr. Cunningham lived off his mother's income. He took care of his mother and made repairs to her home. He simply continued acting and living in the same manner after

her admission to Alpine Village as he did before. There was no intent to deceive and, therefore, § 523(a)(2) is not applicable.

Alpine Village also asserts a cause of action under § 523(a)(4). Under that section, the Bankruptcy Code excepts from discharge any debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. To prevail, a plaintiff must establish by a preponderance of the evidence that a fiduciary relationship existed between the parties and that the defendant committed defalcation in the course of that fiduciary relationship. *Int'l Fid. Ins. Co. v. Fox (In re Fox)*, 357 B.R. 770, 778 (Bankr. E.D. Ark. 2006). Although Mr. Cunningham may have been acting in a fiduciary capacity as to his mother as a result of his power of attorney, there is no evidence of any fiduciary capacity between Mr. Cunningham and Alpine Village. Since there is no such fiduciary capacity, there is no cause of action under § 523(a)(4).

IT IS, THEREFORE, ORDERED that Plaintiff's request for relief is denied and that Plaintiff's complaint (Fil. #1) is dismissed. Separate judgment to be entered.

DATED: August 19, 2010.

BY THE COURT:

/s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
  *John Thomas
  Bradley C. Easland
  John A. Wolf
  United States Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.